# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RICHARD POOLE,

    Plaintiff,

v.	Case No. 05-CV-74163-DT

VALLEY INDUSTRIES, aka VALLEY AUTOMOTIVE,

    Defendant.

                                               /

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Pending before the court is Plaintiff Richard Poole's motion to amend his complaint to add counts of discriminatory retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. Having reviewed the briefing in this matter, the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Plaintiff's motion.

## I. BACKGROUND

On July 18, 1995, Defendant Valley Industries ("Valley") hired Poole as a welder. (Poole I Dep. at 170-171, Pl.'s Summ. J. Ex.) Poole was promoted to cell area leader in 1998. (*Id.* at 171.) Due to Poole's health, he requested a different work assignment, and Valley transferred Poole to the machining department where he worked until his termination. (*Id.* at 174-76.) Poole had notes attesting to a medical restriction that prevented him from working near fumes. (*Id.* at 176-77.) According to Poole, up to twice a week Valley would give him assignments that exposed him to fumes. (Poole III Dep. at 47-48, Pl.'s Summ. J. Ex.) When Poole complained, his supervisor allegedly

responded by saying that they needed him to work there due to staffing shortages. (*Id.*) Poole claims that he would typically comply with his supervisor's request that day and ask to be reassigned the next day. (Poole I Dep. at 170-71, Pl.'s Summ. J. Ex.) Leroy Wilson, Poole's supervisor from 2000, would then take him off the problematic assignment. (*Id.*)

Valley had an attendance policy whereby it assigned an employee points each time the employee was absent or tardy without an excuse. (2001 Attendance Policy, Def.'s Summ. J. Ex. 7.) If an employee accrued 24 points, the employee would be subject to discipline, up to and including termination. (*Id.*) Employees who brought in a doctor's excuse would not be assigned any points for their tardiness or absence. (Geanta I Dep. at 21, Def.'s Summ. J. Ex. 24a) The parties agree that absenteeism was rampant, and as a result, Valley alleges that it began to enforce its attendance policy by disciplining employees who had 24 or more points. (*Id.* at 23.)

Poole alleges that on April 6, 2001, Wilson requested that Poole work in the bending area, which is located in the welding department. (Poole III Dep. at 63-65, Pl.'s Summ. J. Ex.) Poole refused, citing his health problems. (*Id.* at 66.) Poole then contends that Wilson headed to the personnel department, and returned thirty minutes later with a disciplinary warning ("Warning") regarding his absenteeism. (*Id.*) The Warning, dated March 27, 2001, stated that Poole had accumulated 22.75 points, and was receiving a disciplinary warning that he would be terminated if he reached 24 points. (Warning at 0266, Def.'s Summ. J. Ex. 2A.)   Poole refused to look at or sign the Warning, but acknowledged in his deposition that he knew at the time that it dealt with his absenteeism. (Poole III Dep. at 67, Pl.'s Summ. J. Ex.) Poole stated in his

2

deposition that this was the first attendance-related write-up that he had received in 2001. (*Id.*) Immediately following this conversation, Poole claims he approached Terri Gaenta to speak to her about his medical restrictions. (*Id.* at 70.) Poole states that Gaenta said she could not find the medical restriction in his file, and that Poole would have to get another doctor's note. (*Id.* at 73.) Furthermore, Gaenta allegedly told Poole that until he brought in a new note, he was required to work where he was told or he would be fired. (*Id.*) In his deposition, Poole contends that at this point he felt Valley was retaliating against him. (Poole II Dep. at 87, 89, Def.'s Summ. J. Ex. 24c.) Poole claims he returned to work in the bending area because he felt he had no choice. (Poole III Dep. at 74, Pl.'s Summ. J. Ex.)

Poole was absent from work on April 9th and 10th, 2001. (Poole II Dep. at 54-57, Pl.'s Summ. J. Ex.) When he returned to work on April 11th, he brought in a doctor's note for his April 9th absence. (*Id.* at 57-58.) The doctor's note stated that Poole could return to work on April 10th, but he could not be exposed to fumes, do any lifting, and could only perform "light duty." (*Id.* at 71-73.) Poole claims that when he visited his doctor on the 9th, he thought he could return to work on the 10th and only requested a note for one day. (*Id.* at 60-61.) On the 10th, however, Plaintiff contends he was too sick to leave home, and had he been given the chance, he would have provided Defendant with a doctor's note excusing his April 10th absence as well. (*Id.* at 59-60.) Gaenta admits that Valley typically allowed its employees to bring in doctor's notes within a couple days of the employee's absence. (Gaenta II Dep. at 232, Def.'s Summ. J. Ex. 24a.) Gaenta stated in her deposition that she did not wait for a doctor's note excusing Plaintiff's April 10th absence because Plaintiff gave her a note that

3

...
...

specifically said he would be able to work on April 10th, and she was not told that he was bringing in a second note.  (*Id.* at 235.)  Poole claims that thirty minutes after he gave his doctor's note to David Lodge, he was called into a meeting with Lodge and Gaenta where he was terminated for accumulating 25 points.  (Poole II Dep. at 70, 76, Pl.'s Summ. J. Ex.; Termination Record at 0262, Def.'s Summ. J. Ex. 2A.)

On April 25, 2001, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination under the ADA, and claiming that he "was discharged because I requested a reasonable accommodation for my disability."  (EEOC Charge, Def.'s Amend Ex.1.)  On August 3, 2005, the EEOC issued a Notice of Right to Sue to Plaintiff, stating that Plaintiff needed to file his lawsuit within ninety days.  (EEOC Notice, Def.'s Amend Ex. 2.)  Plaintiff filed the instant lawsuit on October 31, 2005, claiming that Defendant failed to accommodate his disability, and that he was subject to harassment and discriminatory discharge on the basis of his disability, in violation of the ADA.  (Pl.'s Compl., Def.'s Amend Ex. 3.)  The parties conducted discovery on these claims, and the discovery cut-off deadline was extended until July 26, 2006.  (06/16/06 Order.)  On August 9, 2006, Poole filed "Plaintiff's Motion to Amend Complaint," and Valley filed "Defendant's Motion for Summary Judgment" on all of the claims in Plaintiff's original complaint.

## II.  STANDARD

The decision whether to grant leave to amend the pleadings is governed by Federal Rule of Civil Procedure 15.  Rule 15 provides that, after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so

requires." Fed. R. Civ. P. 15(a). "In the decision whether to permit an amendment, some of the factors which may be considered by the trial court are undue 'delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (citing *Hageman v. Signal L.0P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

Federal Rule of Civil Procedure 16(b) requires the court to prepare a scheduling order, which can be modified only upon a showing of good cause. Additionally, "a court choosing to modify the schedule upon a showing of good cause may do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003) (citing Fed. R. Civ. P. 16, 1983 advisory committee's notes; *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002)). Before modifying the scheduling order the court should also consider whether the opposing party will suffer prejudice by virtue of the amendment. *Id.* "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Id.* at 909. Thus, Plaintiff must satisfy the requirements of both Rule 15 and Rule 16 for the court to grant his motion to amend.

### III.  DISCUSSION

### A.  Federal Rule of Civil Procedure 16

#### 1.  Good Cause

Plaintiffs' motion fails persuade the court that "good cause" exists to allow an amendment to the court's scheduling order under Rule 16(a).  Plaintiffs' motion to amend comes four months after the deadline to amend pleadings, two weeks after the discovery deadline, and on the same day Defendant filed its motion for summary judgment.[1]  Plaintiff argues that his delay is excusable because his supplemental claims for retaliation are based on evidence Plaintiff was not able to review until mid-July 2006. (Pl.'s Mot. Br. at 1.)  The court's scheduling order does allow amendments based on newly discovered information if the amending party does so "promptly after receipt of the information upon which the proposed amendment is based."  (03/13/06 Scheduling Order.)  However, the court is unpersuaded that the Warning constitutes newly discovered information justifying an eleventh-hour amendment.

According to Plaintiff, the Warning Defendant produced during discovery in July 2006 constitutes newly discovered evidence because it revealed that Plaintiff had a claim for retaliation.  (Pl.'s Mot. Br. at 1.)  Plaintiff claims that before actually seeing the Warning in July 2006, he did not realize it was tied to his termination.  (Poole III Dep. at 81, Pl.'s Summ. J. Ex.)  In his brief, Plaintiff reveals that seeing the Warning triggered

---

[1] Because the court requires the parties to seek concurrence before filing motions, Plaintiff knew of Defendant's motion for summary judgment before he filed his motion to amend.

his memory, allowing him to recall events supporting his retaliation claim, and that his failure to remember these facts prior to seeing the Warning "should not preclude this amendment." (Pl.'s Reply at 6.) Plaintiff avers that he "could not have filed a lawsuit based upon a letter that he did not have and did not read." (*Id.,* at 5.)

The court disagrees. There is only one significant reason that Plaintiff was not aware of the nature and importance of the Warning: he refused to read it when it was presented to him in 2001. (Poole III Dep. p. 80-81, Pl.'s Amend Reply Ex. 9.) Plaintiff attempts to place the blame on Defendant, claiming that Defendant never told Plaintiff to read the Warning or that he was being insubordinate for not reading it. (*Id.*) Plaintiff does acknowledge, however, that Defendant attempted to give him the Warning and asked him to sign it. (*Id.* at 67.) Plaintiff had the opportunity to read the Warning, and rejected it at his peril. Having done so, Plaintiff is, in essence, estopped from complaining to the court that he did not know the precise contents of the Warning.[2]

Furthermore, Plaintiff did know that the Warning dealt with his attendance, and says that he believed *back in April 2001* that it was given to him in retaliation for his request to work away from the fumes. (Poole II Dep. at 87, 89, Def.'s Summ. J. Ex. 24c.) Indeed, Plaintiff's April 25, 2001 EEOC charge stated that "I believe that I was discharged because I requested a reasonable accommodation for my disability." (EEOC Charge, Def.'s Amend Ex. 1.) The court finds that Plaintiff's amendment is based on information Plaintiff knew or should have known in 2001. Because Plaintiff had a

---

[2] Plaintiff's position here is rather reminiscent of the man who, having been convicted of murdering his parents, sought mercy because he was an orphan.

7

sufficient basis to file a claim of retaliation as of April 2001, his failure to do so until August 2006 constitutes undue delay. Plaintiff has not persuaded the court that he could not have reasonably met the court's scheduling deadlines if he had exercised diligence in the prosecution of this action. *See Leary,* 349 F.3d at 906. Consequently, Plaintiff has failed to demonstrate good cause justifying his amendment under Rule 16.[3]

### 2. Prejudice

In deciding whether to amend a scheduling order, the court must also consider "the potential prejudice to the nonmovant." *Id.* at 909. A delay that does not prejudice the opposing party is not a proper basis to deny a motion to amend. *See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Plaintiff contends his motion should be granted because Defendant would not be prejudiced thereby. (Pl.'s Mot. Br. at 7.) First, Plaintiff argues that he notified Defendant regarding his intention to add a claim of retaliation prior to the beginning of Plaintiff's deposition, although Plaintiff admits he did so mere hours before the deposition. (*Id.*) Second, Plaintiff contends that Defendant would not have to conduct any additional discovery because the underlying facts for his retaliation claim are the same as the facts underlying Plaintiff's original claims. (Pl.'s Mot. Br. at 7-8). Furthermore, Plaintiff posits that because none of the other deposed witnesses recalled the exact circumstances surrounding Plaintiff's termination, had Defendant been given the chance to question them regarding Plaintiff's retaliation claim, they could not have provided any more information. (*Id.*) Finally, Plaintiff avers that

---

[3] The court does not find it necessary to separately analyze Defendant's laches argument because it is based on Plaintiff's lack of due diligence, which the court has already addressed in its good cause analysis.

8

Defendant is not prejudiced because it has failed to explain precisely what additional discovery it would need to defend against Plaintiff's retaliation claim. (Pl.'s Reply Br. at 2-3.)

Defendant does, however, claim that it would be prejudiced by the amendment in a number of ways.[4] First, Defendant asserts it would have to conduct more discovery to refute Plaintiff's new allegation. Neither party deposed Wilson during their discovery on Plaintiff's original claims. Because Wilson is the supervisor who allegedly gave Plaintiff the retaliatory Warning, at a minimum, Defendant would need to depose him. (Def.'s Resp. at 9.) Although Plaintiff points out that Geanta, Vela and Lodge could not recall in any detail the circumstances surrounding Plaintiff's termination, Defendant should be able to question them, for example, regarding any non-retaliatory reasons for giving Plaintiff the Warning, and the time and manner in which it was done.[5] Defendant would need to conduct this and other discovery to prepare its response to Plaintiff's allegation that there was a causal connection between Plaintiff's protected activity and an adverse employment action. Therefore, the court is satisfied that Defendant has made an adequate showing of its need to conduct further discovery in response to Plaintiff's amendment.

---

[4] Defendant also contends that it is prejudiced due to its witnesses' recollections being hampered by the passage of time. (Def.'s Resp. at 8-9.) The court finds this argument odd in view of Defendant's decision to not depose Lodge, Geanta, or Vela until July 2006. Defendant does not give any reason why it would have done so sooner had Plaintiff included retaliation claims in its original complaint. Therefore, the court does not weigh this argument in its prejudice analysis.

[5] Despite Plaintiff's assertions to the contrary, both Lodge and Gaenta are Defendant's former employees, and would have to be subpoenaed for further depositions. (Def.'s Resp. at 9.)

Because discovery has ended, this additional discovery on Plaintiff's new claims would necessarily delay trial and modify the court's scheduling order. "At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (internal citations omitted). Moreover, like Valley, the defendant in *Duggins* had already filed a motion for summary judgment. *See id.* As a result, the Sixth Circuit also approved the district court's finding that allowing the amendment would prejudice the defendants by denying them their "anticipated 'closure.'" *Id.* Plaintiff's delayed amendment will prejudice defendant and require the court to amend its scheduling order. Because Plaintiff has failed to show good cause for his delay, the court will deny his motion to amend under Rule 16.

### B. Federal Rule of Civil Procedure 15

A plaintiff must first satisfy Rule 16(b)'s good cause requirement before considering whether Rule 15(a) would allow the amendment. *Leary*, 349 F.3d at 909 (citing *Sosa v. Airport Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). As stated above, Plaintiff has failed to show good cause to amend the scheduling order under Rule 16(b). Nonetheless, the court finds that Plaintiff's amendment is also improper under Rule 15(a).

The court has found that Plaintiff had notice of his discriminatory retaliation claim in 2001. Plaintiff's failure to raise that claim until August 2006, after the discovery cut-off date and on the same day Defendant filed its motion for summary judgment on Plaintiff's original claims, constitutes undue delay. This delay would prejudice

Defendant by the expenditure of more time and money on additional discovery and motion practice. The fact that Plaintiff notified Defendant on August 2, 2006 of his intent to amend his complaint is insufficient to constitute notice and alleviate Defendant's prejudice.

Defendant further argues that Plaintiff's amendment would be futile because Defendant has accommodated Plaintiff's medical requests throughout Plaintiff's employment and, according to Defendant's records, Plaintiff had accumulated more than enough points to justify termination. (Def.'s Resp. at 9-10.) A court considers whether an amendment is futile using the standard of a Rule 12(b) motion to dismiss. *See Neighborhood Development Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23-24 (6th Cir. 1980). Plaintiff points out that unlike in the past, on April 6, 2001 Plaintiff actually refused a request to work in an area near fumes. (Pl.'s Mot. at 9.) Because this refusal allegedly resulted in a Warning thirty minutes later, and termination the next week, Plaintiff asserts that he has established his prima facie case of retaliation. (*Id.*) Plaintiff further contends that Defendant retained other non-disabled employees who had worse attendance records than Plaintiff. (*Id.*) Based on these allegations, the court finds that Plaintiff has made a showing sufficient to withstand a motion to dismiss. Therefore, the court does not agree that Plaintiff's amendment would be futile.

However, as stated above, Plaintiff's belated amendment remains a product of undue delay, resulting in prejudice for Defendant. Therefore, Plaintiff's motion to amend

11

would also be properly denied under Rule 15.  Accordingly, the court will deny Plaintiff's motion to amend in its entirety.

## IV.  CONCLUSION

IT IS ORDERED that Plaintiff's "Motion to Amend Complaint" [Dkt. #15] is DENIED.

                                             s/Robert H. Cleland
                                             ROBERT H. CLELAND
                                             UNITED STATES DISTRICT JUDGE

Dated:  October 6, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 6, 2006, by electronic and/or ordinary mail.

                                             s/Lisa G. Wagner
                                             Case Manager and Deputy Clerk
                                             (313) 234-5522