**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD POOLE,

    Plaintiff,

v.                                      Case No. 05-CV-74163-DT

VALLEY INDUSTRIES, a/k/a VALLEY
AUTOMOTIVE,

    Defendant.
                                        /

**OPINION AND ORDER GRANTING "DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT"**

Pending before the court is "Defendant's Motion for Summary Judgment." This motion has been fully briefed and the court concludes that a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion.

**I. BACKGROUND**

On July 18, 1995, Defendant Valley Industries ("Valley") hired Poole as a welder. (Poole I Dep. at 170-171, Pl.'s Ex.) Poole was promoted to cell area leader in 1998. (*Id.* at 171.) Due to Poole's health, he requested a different work assignment, and Valley transferred Poole to the machining department where he worked until his termination. (*Id.* at 174-76.) Poole had given Valley notes attesting to a medical restriction that prevented him from working near fumes. (*Id.* at 176-77.) According to Poole, up to twice a week his supervisor would nevertheless give him assignments that exposed him to fumes. (Poole III Dep. at 47-48, Pl.'s Ex.) When Poole complained, his

supervisor allegedly responded by saying that they needed him to work there due to staffing shortages.  (*Id.*)  Poole claims that he would typically comply with his supervisor's request that day and ask to be reassigned the next day.  (Poole I Dep. at 170-71, Pl.'s Ex.)  Leroy Wilson, Poole's supervisor from 2000, would then take him off the problematic assignment.  (*Id.*)

Valley had an attendance policy under which it assigned an employee points each time the employee was absent or tardy without an excuse.  (2001 Attendance Policy, Def.'s Ex. 7.)  If an employee accrued 24 points, the employee would be subject to discipline, up to and including termination.  (*Id.*)  Employees who brought in a doctor's excuse would not be assigned any points for their tardiness or absence.  (Gaenta I Dep. at 21, Def.'s Ex. 24a)  The parties agree that absenteeism was rampant, and as a result, Valley alleges that it began to enforce its attendance policy by disciplining employees who had 24 or more points.  (*Id.* at 23.)

Poole alleges that on April 6, 2001, Wilson requested that Poole work in the bending area, which is located in the welding department.  (Poole III Dep. at 63-65, Pl.'s Ex.)  Poole refused, citing his health problems.  (*Id.* at 66.)  Poole then contends that Wilson headed to the personnel department, and returned thirty minutes later with a disciplinary warning ("Warning") regarding his absenteeism.  (*Id.*)  The Warning, dated March 27, 2001, stated that Poole had accumulated 22.75 points, and was receiving a disciplinary warning that he would be terminated if he reached 24 points.  (Warning at 0266, Def.'s Ex. 2a.)  Poole refused to look at or sign the Warning, but acknowledged in his deposition that he knew at the time that it dealt with his absenteeism.  (Poole III Dep. at 67, Pl.'s Ex.)  Poole stated in his deposition that this was the first attendance-related

2

write-up that he had received in 2001. (*Id.*) Immediately following this conversation, Poole claims he approached Human Resources Manager Terri Gaenta to speak to her about his medical restrictions. (*Id.* at 70.) Poole states that Gaenta said she could not find the medical restriction in his file, and that Poole would have to get another doctor's note. (*Id.* at 73.) Furthermore, Gaenta allegedly told Poole that until he brought in a new note, he was required to work where he was told or he would be fired. (*Id.*) In his deposition, Poole contends that at this point he felt Valley was retaliating against him. (Poole II Dep. at 87, 89, Def.'s Ex. 24c.) Poole claims he returned to work in the bending area because he felt he had no choice. (Poole III Dep. at 74, Pl.'s Ex.)

Poole was absent from work on April 9th and 10th, 2001. (Poole II Dep. at 54-57, Pl.'s Ex.) When he returned to work on April 11th, he brought in a doctor's note for his April 9th absence. (*Id.* at 57-58.) The doctor's note stated that Poole could return to work on April 10th, but he could not be exposed to fumes, do any lifting, and could only perform "light duty." (*Id.* at 71-73.) Poole claims that when he visited his doctor on the 9th, he thought he could return to work on the 10th and only requested a note for one day. (*Id.* at 60-61.) On the 10th, however, Plaintiff contends he was too sick to leave home, and had he been given the chance, he would have provided Defendant with a doctor's note excusing his April 10th absence as well. (*Id.* at 59-60.) Gaenta admits that Valley typically allowed its employees to bring in doctor's notes within a couple days of the employee's absence. (Gaenta II Dep. at 232, Def.'s Ex. 24a.) Gaenta stated in her deposition that she did not wait for a doctor's note excusing Plaintiff's April 10th absence because Plaintiff gave her a note that specifically said he would be able to work on April 10th, and she was not told that he was bringing in a second note. (*Id.* at

3

235.) Poole claims that thirty minutes after he gave his doctor's note to David Lodge, he was called into a meeting with Lodge and Gaenta where he was terminated for accumulating 25 points. (Poole II Dep. at 70, 76, Pl.'s Ex.; Termination Record at 0262, Def.'s Ex. 2a.)

Plaintiff applied for Social Security Disability Insurance ("SSDI") benefits from the Social Security Administration ("SSA") on April 17, 2001. (*See* SSDI Exhibits, Def.'s Ex. 17.) After his application was denied, Plaintiff appealed, submitted additional evidence, and testified at an October 24, 2004 hearing. (*Id.*) The SSA then determined that Plaintiff was disabled and entitled to benefits retroactive to April 11, 2001. (*Id.*)

On April 25, 2001, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination under the ADA, and claiming that he "was discharged because I requested a reasonable accommodation for my disability." (EEOC Charge at 0855, Def.'s Ex. 4.) After the EEOC issued a "Notice of Right to Sue," Plaintiff filed the instant lawsuit, claiming that Defendant failed to accommodate his disability, and that he was subject to harassment and discriminatory discharge on the basis of his disability, in violation of the ADA. (Pl.'s Compl.) The parties conducted discovery on these claims, and the discovery cut-off deadline was extended until July 26, 2006. (06/16/06 Order.) On August 9, 2006, Valley filed "Defendant's Motion for Summary Judgment" on all of the claims in Plaintiff's original complaint.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to

4

judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

### III. DISCUSSION

#### A. Plaintiff's Discriminatory Discharge Claim

#### 1. Judicial Estoppel

Judicial estoppel is an equitable doctrine that prevents a party "from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 472-73 (6th Cir. 1988). "In order to invoke judicial estoppel, a party must show that the

5

opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990) (citing *Reynolds*, 861 F.2d at 472-73). Judicial estoppel applies when the prior proceeding is an administrative proceeding. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n.3. (6th Cir. 1982). Defendant argues that this equitable doctrine precludes Plaintiff from asserting that he was able to work at the time of his discharge because he successfully argued that he was disabled and unable to work in his successful SSDI proceeding.

The United States Supreme Court has recently addressed the application of judicial estoppel in this context. *See Cleveland v. Policy Mgmt. Sys., Corp.*, 526 U.S. 795 (1999). In *Cleveland*, the plaintiff was successful in her earlier application for SSDI benefits because the she represented to the SSA that she was totally disabled. *Id.* at 802. The Supreme Court reviewed the Fifth Circuit's decision to apply a presumption of disability in her later ADA claim. *Id.* The *Cleveland* Court first determined that there were enough differences between the SSA and the ADA to reject this negative presumption. *Id.* at 805. The Court nonetheless recognized that a "plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work,' will appear to negate an essential element of her ADA case . . . if she does not offer a sufficient explanation." *Id.* at 806. As a result, the Court held that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Id.*

To the extent that there is an inconsistency between Plaintiff's successful SSDI benefits claim and Plaintiff's current lawsuit under the ADA, Plaintiff contends that the

6

inconsistency is due to changes in Plaintiff's medical condition.  (Pl.'s Resp. at 6.)  As a result, Plaintiff's symptoms were allegedly more severe in 2004 than they were in 2001.  (*Id.*)  The *Cleveland* Court stated that changes in a plaintiff's medical condition could be one of the ways a plaintiff can resolve the apparent inconsistency.  *Cleveland*, 526 U.S. at 805.  In light of Plaintiff's claims, stated in full below, that his medical condition in 2001 was different than his condition in 2004, the court finds that Plaintiff's success in his application for SSDI benefits does not prevent Plaintiff from arguing here that he was a "qualified individual" under the ADA.

Defendant contends that Plaintiff's testimony at the 2004 SSA hearing contains purely factual assertions that Plaintiff is now prevented from both contradicting and explaining.  (Def.'s Mot. Br. at 5.)  In *Cleveland*, the Court clarified that its holding does not apply to "purely factual matters, such as 'The light was red/green.'"  *Cleveland*, 526 U.S. at 802.  In such cases, the Court decided to "leave the law as we found it."  *Id.* at 807.  Therefore, these prior factual statements regarding Plaintiff's medical condition are appropriately analyzed under pre-*Cleveland* Sixth Circuit precedent holding that Plaintiff cannot create a genuine issue of fact by simply contradicting his own previous sworn statement.  *See Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991) (cited as the current Sixth Circuit law, but "not necessarily endorse[d]," by *Cleveland*, 526 U.S. at 806-07).  As a result, Plaintiff is judicially estopped from adopting a position here that contradicts his earlier purely factual statements to the SSA.

The only sworn statements brought to the court's attention are factual statements Plaintiff made during an October 20, 2004 hearing before the SSA.[1] (*See* 10/20/06 SSA Hearing at 2-7, Def.'s Ex. 17.) The SSA's decision stated that:

> Claimant testified that he has taken 40 mg of Prednisone daily for ten years. He stated that he needs to lie down three or four times a day because of fatigue and the side effects of his medicine. He stated that he can stand 2 hours using his cane and becomes short of breath when walking only half a block. Claimant reported that he has parathesias and cramping in his hands and left leg every day. He stated that he can lift no more than 10-15 pounds.

(*Id.* at 4.) The court is not convinced, however, that Plaintiff is taking an inconsistent factual position in this proceeding.[2] Plaintiff asserts that during his 2004 hearing, his doctors had reduced the level of medication he was taking, resulting in more serious symptoms and limitations than Plaintiff experienced in April 2001. (*See* Poole II Dep. at 15, Def.'s Ex. 24c.) Accordingly, in an undated statement to the SSA, Plaintiff claimed that since September 2001, the date his request for reconsideration was filed, his diabetes, vision, gout, lupus and sarcodosis were getting worse.[3] (Claimant's

---

[1] Defendant cites a number of statements Plaintiff made in his application for SSDI benefits and statements made by medical professionals and vocational experts to support its judicial estoppel position. Because judicial estoppel only applies to Plaintiff's own sworn statements, the court will only consider those statements in its analysis.

[2] Defendant forcefully argues that Plaintiff should not be able to explain inconsistent factual positions. (Def.'s Mot. Br. at 5-6.) Plaintiff, however, is not trying to explain inconsistent factual positions; he is attempting to explain why his factual positions are not inconsistent in the first place. Defendant cites no authority that prohibits Plaintiff from doing so.

[3] In its brief Defendant erroneously asserts that Plaintiff claimed his medical condition was getting worse "[a]s of September 19, 2001." (Def.'s Reply at 2.) Plaintiff, however, responded to the question "Has there been any change in your condition *since* the above date [September 19, 2001]?" (Form HA-4486, Def.'s Ex. G (emphasis added).)

8

Statement at 1, Def.'s Ex. G.) While Plaintiff stated in his deposition that his diabetes and gout symptoms generally stayed the same from 2001 to 2004, (Poole II Dep. at 13-17, Def.'s Ex. 24c), when questioned about his sarcoidosis symptoms, Plaintiff specifically stated that he "can't remember" the extent of his limitations from 2002-2004 because the doctors had "been weaning me off and on the predrisone," (*id.* at 15).

Defendant attempts to discredit this assertion by pointing to deposition testimony where Defendant claims Plaintiff admitted his medical condition has remained the same from April 2001 through August 2006. (Def.'s Mot. Br. at ¶ 35.) A careful review of Plaintiff's deposition, however, reveals that Plaintiff claimed that the limitations he mentioned in his 2004 SSA testimony continued from 2004-2006, (Poole I Dep. at 119-23), but they differed from his limitations in April 2001, (*id.* at 128-34). Plaintiff did claim that he had sedentary restrictions in 2001, (*id.* at 129), as well as some difficulty with vision, (*id.* at 130-31), and lifting more than ten pounds, (*id.* at 131-34). However, Defendant stated that in April 2001 he did not have the same problems with shortness of breath after walking one block, (*id.* at 128), fatigue,[4] (*id.*), reaching, (*id.* at 130), or environmental limitations, (*id.*). Most notably, Plaintiff claims he could stand for eight hours in April 2001, as opposed to only two with a cane in 2004. (*Id.* at 131.)

---

[4] Defendant points to a May 16, 2001 signed statement where Plaintiff admitted he took a three-hour nap every day, and his medication made him "feel very lazy and compel [sic] me to sleep[] a lot." (Daily Activities, Def.'s Ex. E.) Defendant characterizes this statement as an admission of Plaintiff's *need* to take naps during the day, making Plaintiff unable to perform any position at Valley. (*See* Def.'s Reply at 2.) Plaintiff explains in his deposition that while he did take naps after being terminated, he did not need to do so, and would not have done so had he been working. (Poole I Dep. at 100-08, Def.'s Ex. 24c.) Because the court must view all facts in the light most favorable to Plaintiff, the court accepts Plaintiff's interpretation for purposes of this motion.

9

Defendant then argues that because the SSA awarded Plaintiff benefits retroactive to April 2001, that precludes Plaintiff from claiming that his medical condition changed during that period. (Def.'s Mot. Br. at 7.) Because the SSDI award does not state its basis for awarding Plaintiff benefits retroactively to April 2001, it does not prevent Plaintiff from establishing a triable issue of fact regarding his disability. Therefore, the court finds that neither Plaintiff's successful SSDI claim nor Plaintiff's 2004 sworn statements preclude Plaintiff as a matter of law from claiming he was otherwise qualified in 2001.

## 2. Prima Facie Case

The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Although Plaintiff has not proffered evidence of direct discrimination,[5] Plaintiff may prove a case of disability discrimination

---

[5] Plaintiff claims he has demonstrated direct evidence of disability discrimination. Indeed, in his brief, Plaintiff spends over five pages analyzing why he meets the direct evidence test. (*See* Pl.'s Resp. at 11-17.) However, Plaintiff has omitted the most essential requirement of a direct evidence claim: direct evidence. "Direct evidence of discrimination is evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*) (*emphasis added*) (quoting *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)); *see also Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) ("Direct evidence is evidence that proves the existence of a fact without requiring any inferences."). Plaintiff fails to even allege any instances of direct evidence. Therefore, the court finds Plaintiff has failed to show direct evidence of disability discrimination.

indirectly under the *McDonnell Douglas* burden-shifting analytical framework. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004). This framework requires Plaintiff to first establish a *prima facie* case of discrimination by showing that: "1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap." *Monette v. Electronic Data Sys.*, 90 F.3d 1173, 1178 (6th Cir. 1996)). If a plaintiff establishes a *prima facie* case, the defendant has the burden of production to offer a legitimate non-discriminatory reason for its action. *Id.* If the defendant meets this burden, the plaintiff must introduce evidence that would permit a reasonable jury to conclude that the employer's proffered explanation is merely a pretext for discrimination. *Id.*

Defendant does not contest that Plaintiff is an individual with a disability. Defendant does, however, argue that Plaintiff is not "otherwise qualified for the position" because of his absenteeism. (Def.'s Mot. Br. at 9-10 (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.") (citations omitted)).) Plaintiff quotes *Fritz v. Mascotech Auto. Sys. Group*, 914 F. Supp. 1481, 1488-89 (E.D. Mich. 1996), for the proposition that he "does not forfeit the protection of the ADA solely by virtue of his poor attendance." (Pl.'s Resp. at 13.) The *Fritz* Court, however, goes on to say that Defendant is entitled to summary judgment if it shows that "attendance and punctuality were essential functions of Plaintiff's job and the Defendant's reasonable attempts to accommodate Plaintiff failed to enable him to satisfy those functions." *Id.*

11

Defendant points to its Employee Handbook to demonstrate that punctuality and attendance are a necessary component of employment. (*See* 2001 Valley Employee Handbook at 0544, Def.'s Ex. 6.) Moreover, Defendant has offered valid justifications for its attendance and punctuality requirements, citing its production schedule. (*See* Gaenta II Dep. at 212, Def.'s Ex. 24a.) Plaintiff claims that because Valley had problems with employee absenteeism generally, that calls into question the importance of punctuality and attendance. (Pl.'s Resp. at 14.) Defendant counters by stating that its absenteeism problem is the very reason it started to more strictly enforce its attendance policy. (*See* Lodge Dep. at 83, Def.'s Ex. 24b.) The ADA specifically dictates that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). As other courts have recognized, it is the "unusual case in which regular attendance and punctuality are unnecessary." *Fritz*, 914 F. Supp. at 1489 (citing *Wimbley v. Bolger*, 642 F. Supp. 481, 485 (W. D. Tenn. 1986)).

Defendant has also taken numerous steps to accommodate health-related absences. Defendant allowed its employees to take an unlimited number of absences as long as they were accompanied by a doctor's note. (Gaenta I Dep. at 21, Def.'s Ex. 24a.) Plaintiff admitted in his deposition that this condition was reasonable. (Poole I Dep. at 252, Def.'s Ex. 24c.) Therefore, despite Plaintiff's arguments to the contrary, this case is not analogous to either *Fritz* (where the employer argued its employee's

*excused* absences[6] and tardiness prohibited him from being an otherwise qualified individual) or *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998) (where employer required "uninterrupted attendance" despite an employee's need for medical leaves of absence).

"If an employee has a qualifying disability, the employer is required to provide such reasonable accommodations as will enable [him] to perform the essential functions of [his] job." *Trepka v. Bd. of Educ. of Cleveland*, Case No. 00-4063, 28 Fed. Appx. 455, 459 (6th Cir. Jan. 24, 2004) (citing 42 U.S.C. § 12112(b)(5)(A); *Gaines v. Runyon*, 107 F.3d 1171, 1178 (6th Cir. 1997)). Therefore, a threshold issue is whether Plaintiff has show that the accommodation he seeks would enable him to meet Plaintiff's attendance requirement. *See Willis v. Conopco Inc.*, 108 F.3d 282, 284 (11th Cir. 1997) ("[An] accommodation is 'reasonable'—and, therefore, required under the ADA–only if it enables the employee to perform the essential functions of her job."). Plaintiff claims that he could have performed his work in the machine shop if Defendant refrained from assigning him to posts that would expose him to fumes against his doctor's orders. (Pl.'s Resp. at 1.) Despite this requested accommodation, Plaintiff claims Defendant assigned him tasks that violated this medical restriction up to twice a week. (Poole III Dep. at 47-48, Pl.'s Ex.) Plaintiff argues that these assignments irritated his respiratory

---

[6] Plaintiff does claim that he was absent from February 28 to March 5, 2001, gave a doctor's note to Wilson when he returned to work, but was still assigned points for those absences. (Poole III Dep. at 76, Pl.'s Ex.) Defendant maintains it believed in good faith that Plaintiff had accumulated 25 points and had no knowledge of this missing excuse. (Def.'s Reply at 5.) The doctor's note was neither in Plaintiff's personnel file nor produced at the EEOC proceeding. Plaintiff has failed to raise a genuine issue of material fact as to Defendant's knowledge that those absences were excused.

13

problems and added to the time he had to take off work. (Pl.'s Resp. at 14.) Even if these assignments did exacerbate Plaintiff's medical problems, thereby contributing to Plaintiff's absenteeism, these additional health-related absences would not have impacted his attendance record because Defendant did not assign points for excused absences. Plaintiff has therefore failed to show that Defendant's lack of accommodation led to Plaintiff's excessive *unexcused* absences. Because a reasonable jury would be unable to find that Plaintiff's requested accommodation would enable him to perform the essential functions of his job (i.e., meet Defendant's attendance and punctuality requirements), it is not a required, reasonable accommodation under the ADA.

The court is satisfied that attendance and punctuality were necessary for Plaintiff's employment. Defendant accommodated Plaintiff's medical concerns by not assigning points for absences or tardiness accompanied by a doctor's note. Despite this accommodation, Defendant's records indicate that Plaintiff accumulated over 24 points as a result of his *unexcused* absences and tardiness. Because Plaintiff has failed to raise a genuine issue of material fact regarding whether any other reasonable accommodation would enable him to meet this essential job requirement, Plaintiff has failed to show that he is "otherwise qualified" to perform his job requirements, with or without reasonable accommodation.[7] Plaintiff is therefore unable to establish a *prima facie* case of disability discrimination as a matter of law.

---

[7] To the extent Plaintiff has brought a separate claim alleging Defendant's failure to accommodate, summary judgment is also appropriate for that claim for the same reasons stated above. *See* 42 U.S.C. § 12112(b)(5)(A).

## B. Plaintiff's Harassment Claim

Next, Plaintiff contends that Defendant's practice of assigning him to hazardous assignments despite his medical restrictions constituted harassment in violation of the ADA. (Pl.'s Resp. at 22.) Defendant responds by noting that Plaintiff failed to allege harassment in his EEOC charge, which bars Plaintiff from seeing recovery on that claim in this court. (Def.'s Mot. Br. at 15 n.6.)[8]

A claimant who wishes to bring a lawsuit claiming a violation of the ADA must first file a charge of discrimination with the EEOC. See 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1). Federal courts do not have subject matter jurisdiction to hear ADA claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably expect to grow out of an EEOC charge. See *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (citing *Ang v. Proctor & Gamble*, 932 F.2d 540, 544-45 (6th Cir. 1991)). In his EEOC charge Plaintiff did nothing to indicate he was alleging a harassment claim. (*See* EEOC Charge at 0855, Def.'s Ex. 4.) Moreover, Plaintiff explicitly limited his EEOC charge to events that occurred on April 11, 2001. (*Id.*) Plaintiff has not even alleged that Defendant asked him to perform work contrary to his medical limitations on April 11, 2001. Therefore, Plaintiff's harassment claim must be dismissed for lack of subject matter jurisdiction.

---

[8] The court notes that Defendant makes this key jurisdictional argument in a footnote, which possibly led to Plaintiff's failure to notice and respond to this argument. Although the court finds the law clearly supports Defendant's position on this issue, rendering Plaintiff's failure to respond moot, the court advises Defendant against raising an entire substantive claim in a mere footnote, especially one that fails to comply with minimum font size standards, and is relatively difficult to read.

Additionally, the court also finds that Plaintiff has failed to establish a *prima facie* case of harassment as a matter of law. To establish his ADA harassment claim, Plaintiff must show that (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) Defendant knew or should have known about the harassment and failed to take corrective measures. *Trepka*, 28 Fed. Appx. at 461 (citing *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997) (establishing the framework of proof under Title VII for sexual harassment); *Crawford v. Medina General Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (holding that the elements of a hostile work environment claim are the same across discrimination contexts and applying those elements specifically to the ADEA)).

Plaintiff offers two basis for his harassment claim. First, Plaintiff points to "being forced to work in conditions, plainly against his restrictions, once or twice a week for almost two years." (Pl.'s Resp. at 22.) Plaintiff fails to provide the court with any argument in law or fact as to why Defendant's alleged weekly practice of assigning Plaintiff to work in or around the welding department constitutes harassment undertaken because of Plaintiff's disability. A plaintiff must not only demonstrate an issue of fact regarding whether the conduct was harassment, but also whether "the allegedly harassing conduct was motivated by a bias towards the employee's protected class." *Trepka*, 28 Fed. Appx. at 461 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). Plaintiff has proffered no evidence on which a reasonable jury could find that Defendant gave Plaintiff these assignments because of Plaintiff's disability. As stated by the Sixth Circuit, "[t]o avoid summary judgment, [Plaintiff] need not prove

16

[Defendant's] motivation, but [he] should at least provide some evidence of discrimination–and we can find none." *Id*. at 462.

Finally, Plaintiff cites Wilson's alleged comment: "do you think you can be late because you are sick?" as evidence of harassment. (Poole II Dep. at 220-21, Def.'s Ex. 24c.) It is well established that isolated comments do not give rise to a harassment claim. *See Fargher*, 524 U.S. 775. Even construing this statement in the light most favorable to Plaintiff, it does not establish harassment as a matter of law. Furthermore, Plaintiff has failed to show that Wilson's statement unreasonably interfered with his work performance, and that Valley knew or should have known about Wilson's comment and failed to take corrective measures. The court finds that Plaintiff has failed to demonstrate genuine issues of material fact regarding his harassment claim, and summary judgment is therefore proper.

## IV.  CONCLUSION

IT IS ORDERED that "Defendant's Motion for Summary Judgment" [Dkt. #16] is GRANTED.

                                                            s/Robert H. Cleland  
                                                            ROBERT H. CLELAND  
                                                            UNITED STATES DISTRICT JUDGE

Dated:  October 11, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 11, 2006, by electronic and/or ordinary mail.

                                                            s/Lisa G. Wagner  
                                                            Case Manager and Deputy Clerk  
                                                            (313) 234-5522